**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**JEWELL WILLIAMS, individually And on behalf of all others similarly situated**

**CIVIL ACTION NO. _________**

**VERSUS**

**JURY DEMANDED**

**CHESAPEAKE OPERATING, INC.**
**CHESAPEAKE LOUISIANA, LP, and**
**CHESAPEAKE ENERGY CORPORATION**

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

**COMES NOW,** JEWELL WILLIAMS, individually and on behalf of those similarly situated (hereinafter, collectively referred to as "Plaintiff") by their undersigned counsel, who bring this civil action for declaratory relief against the above named Defendants and complain and allege as follows:

## I. NATURE OF ACTION

1.

Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of:

a. All private juridical persons who owned royalty interests in natural gas production from real property located in the State of Louisiana during anytime from three (3) years prior to the date of filing herein, to date;

b. Whose natural gas from said properties was produced and marketed by defendants Chesapeake Louisiana, LP and Chesapeake Operating Inc. or their wholly controlled entities or affiliates;

    c.    Whose royalty payments for such natural gas production were calculated and/or made by defendants; and

    d.    Whose royalty payments were based upon prices that were below "market value" (the highest prices obtainable for natural gas of like kind, character, and quality, at the times of production with reasonable effort).

2.

The plaintiff seeks declaratory relief that the defendant's action of selling the produced natural gas at below market value breaches its duty to the plaintiff under the April 24, 2009 oil, gas and mineral lease, hereinafter described, and the Louisiana Mineral Code.

3.

As a result of the defendant's actions the plaintiff and the class she seeks to represent have suffered from the underpayment of royalties.

## II. PARTIES

4.

Plaintiff, Jewel Williams is a single woman of age and a resident of Caddo Parish.

5.

Defendant Chesapeake Operating, Inc. is an Oklahoma limited liability company doing business in the state of Oklahoma. Chesapeake Operating Inc may be served with process by serving its Registered Agent, The Corporation Company, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

6.

Defendant Chesapeake Louisiana, LP is an Oklahoma limited partnership doing business in the state of Oklahoma. Chesapeake Louisiana LP may be served with process at its offices located

at 6100 North Western, Oklahoma City, Oklahoma 73118.

7.

Defendant Chesapeake Energy Corporation (including predecessors, successors, and affiliates) is an Oklahoma corporation with its principal executive offices located at 6100 Northwestern Avenue, Oklahoma City, Oklahoma 73118. Upon information and belief, Chesapeake Energy Corporation is the parent company of Chesapeake Energy Marketing, Inc. and Chesapeake Exploration LLC. Upon information and belief, Chesapeake Operating Inc. is a wholly owned subsidiary of Chesapeake Energy Corporation. Chesapeake Energy Marketing Inc. lists as its president Chesapeake Energy Corporation. Furthermore, the registered agent for service of process for Chesapeake Energy Marketing, Inc. is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas, 72201.

## III. JURISDICTION AND VENUE

8.

This court has jurisdiction pursuant to 28 U.S.C. §1332 in that there exists complete diversity of citizenship between all of the parties to this action and the amount in controversy exclusive of interest and costs exceeds the sum or value of $75,000.

9.

This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1391(a).

## IV. STATEMENT OF THE FACTS

10.

On April 24, 2009, the Plaintiff entered into an oil, gas and mineral lease with Chesapeake Louisiana, LP wherein the Plaintiff granted lessee Chesapeake Louisiana LP exclusive

rights to explore, develop, produce and market oil, gas and other minerals from her land within Caddo Parish. The lease is recorded under Entry No. L0223419 of the Conveyance Records of Caddo Parish. The lease covers the North Half of the Northeast Quarter of Section 28, Township 15 North, Range 16 west, Caddo Parrish, Louisiana. A full description of the property is included in the lease; a copy is attached as Exhibit A.

11.

The Plaintiff-lessor, in consideration thereof, was to receive royalty payments of 1/5 of the market value at the well of the natural gas sold or used.

12.

The oil, gas and mineral lease was granted on Plaintiff's land located in the Haynesville Formations, or Haynesville Shale, a sedimentary rock formation containing oil and gas in northwestern Louisiana, southwestern Arkansas and eastern Texas. The most productive areas in the formation have been Caddo, Bienville, Bossier, DeSoto, Red River and Webster Parishes of Louisiana as well as adjacent areas in southwest Arkansas and east Texas. Plaintiff's land is located in Caddo Parish, Louisiana.

13.

Chesapeake Louisiana LP has sold the natural gas from the leasehold of Plaintiffs property for below market value.

14.

Jewel Williams has filed a letter protesting the non-payment and underpayment of royalties. Attached as Exhibit B is the October 25, 2010 Letter from Jewell Williams to Chesapeake Louisiana, LP and Chesapeake Operating, notifying Chesapeake about the royalty dispute over natural gas that was produced and/or marketed from the Haynesville Shale

Formation by Chesapeake.[1] Upon information and belief, this letter is sufficient to put Chesapeake on notice as to any royalty underpayment relating to the Haynesville Shale oil and gas leases.

## V. CAUSES OF ACTION

### A. Declaratory Relief

15.

The foregoing paragraphs are incorporated as if fully set forth herein.

16.

The Plaintiff has been underpaid from royalties based upon natural gas produced from the Lease but sold by Chesapeake for below market value.

17.

Jewel Williams has provided notice to Chesapeake relating to the inaccurate royalty payments on behalf of herself and, by relation, all others commonly situated.

18.

Upon information and belief, Chesapeake has breached its obligation to reasonably market the gas produced from the Lease in the Haynesville Formation by entering into marketing and processing agreements with affiliated entities that offer less favorable terms than would have been available via transactions negotiated with independent third parties.

19.

Instead of marketing the gas produced from Plaintiff's premises with due diligence and as

[1] Under Article 137 of the Louisiana Mineral Code, La. R.S. 31:137, written notice is not required unless Plaintiff is seeking damages. In this instance the class members are seeking unpaid royalties and the formal notice provisions of Art. 137 need not apply. If notice is required, the letter provided by Jewel Williams for her individual lease to the Defendants of underpaid royalties is sufficiently detailed to provide formal notice for all similarly situated plaintiffs.

a reasonably prudent lease operator to obtain the best price reasonably possible, Chesapeake has sold the gas produced from the leased premises to affiliated or associated entities for artificially low prices in an effort to profit from the difference in correspondingly lower royalty payments and the higher actual prices for the gas produced.

20.

Chesapeake has also underpaid the difference between the royalties that would have been paid on the price that could have been achieved in an arms-length transaction and the royalties that were actually paid based on the affiliated sales price.

21.

Plaintiff, individually and on behalf of any similarly situated individuals, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 18 U.S.C. § 2201(a), hereby seek a declaratory judgment that Defendants actions in selling natural gas below market value violated the Louisiana Mineral Code and breached its obligations as lessee under the Lease with the lessor-plaintiff by underpaying royalties.

**B. Breach of Contract**

22.

The foregoing paragraphs are incorporated as if fully set forth herein.

23.

The conduct of Defendants described herein constitutes a breach of contract.  The lease that forms the underlying contractual relationship between Defendants and Plaintiff are substantially identical with regard to the royalties to be paid by Defendants to any Plaintiff relating to natural gas in the Haynesville Shale formation.  Specifically, the Jewell Williams lease, as well as other leases in question, requires Defendants to pay royalties on

natural gas equal to the royalty share of the net proceeds of all gas sold by Defendants on the lease and the market value of such gas at the well for gas sold off the lease.

24.

Section 4 of the Lease provides, in part: the royalties to be paid by Lessee are:

> on gas, including casing head gas, or other gaseous substance produced from said land and sold or used on the premises or for the extraction of gasoline or other products therefrom, the market value at the well on one-fifth (1/5th) of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-fifth (1/5th) of the amount realized from such sale, such gas, casinghead gas, residue gas, or gas of any other nature or description whatsoever, as may be disposed of for no consideration to Lessee, either through unavoidable waste or leakage, in order to recover oil or other liquid hydrocarbons, or returned to the ground, shall not be deemed to have been sold or used either on or off the premises within the meaning of this paragraph.

25.

Royalty, at all times material hereto, should have been, and still should be, calculated on the basis of the amounts received or that should have been received by Defendants for the sale of the gas, including the pipeline quality gas and associated liquids, from unrelated third parties in true arms length transactions.

26.

Upon information and belief, Chesapeake employs a scheme whereby the gas is first transferred to its gathering subsidiary (believed to be Chesapeake Energy) who ostensibly

conducts the first true sale to a bona fide third party purchaser.  Chesapeake and/or Chesapeake Operating is paid a fictitious price by its wholly owned subsidiaries or affiliated entities that is substantially less than 100% of the price received from the first bona fide purchaser and also substantially less than either the market value at the well or the amount actually received by Chesapeake.  The fictitious price received by Chesapeake Operating is ultimately utilized by Chesapeake Operating to compute royalties due to Jewell Williams, resulting in a substantial underpayment of royalties.

27.

Defendants have paid royalties on an artificially contrived sales price via phantom transactions with related entities in order to conceal the actual amounts to which Plaintiff has been and is entitled.  Plaintiff has not had actual or constructive knowledge of these activities, nor could such knowledge have been achieved through the exercise of reasonable diligence

**C. Breach of the Louisiana Mineral Code**

28.

The foregoing paragraphs are incorporated as if fully set forth herein.

29.

Under Article 122 of the Louisiana Mineral Code the relationship between a lessee and lessor is stated as follows:

A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor.  Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee. La. R.S. §31:122

30.

Chesapeake has failed to provide the full amount of royalties to class members over an appreciable length of time without justification. This is a breach of the responsibility under the Louisiana Mineral Code that is active in character, willful and unjustified.

31.

Under Article 137 of the Louisiana Mineral Code the mineral lessor "must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease" before filing suit when seeking relief from the failure to make timely or proper payment of royalties. Plaintiff at this time seeks only the recovery of underpaid royalties, and therefore, notice is not required. Out of an abundance of caution, Jewel Williams has provided such notice. *See* Exhibit B. Upon information and belief, this letter is sufficient to put Chesapeake on notice as to any royalty underpayment relating to the Haynesville Shale oil and gas leases, as expressed through this complaint under La. R.S. 31:137-143.[2]

32.

After the written notice has been given, Article 138 of the Louisiana Mineral Code applies, giving the lessee thirty days within which to respond to the notice either by paying or stating a reasonable cause for nonpayment. La. R.S. 31:138. Chesapeake's Response Letter of November 24, 2010 is attached as Exhibit C. This letter, as well as an additional response denying requests for additional information on December 10, 2010 (attached as Exhibit D) fails to adequately address the royalty dispute raised in Ms. Williams' initial correspondence and fails

[2] Article 140 outlines the proper remedy if the lessee fails to pay the royalties due or fails to respond to the notice with a reasonable cause for failure to pay. The judicial remedy available includes: dissolution of the lease; the award of double the amount due plus interest, as damages, together with a reasonable attorney's fee. La. R.S. 31:140. As Ms. Williams is not seeking judicial remedy outside of the unpaid royalties, these provisions need not apply.

to provide a reasonable cause for failure to pay. None of the disputed royalties have been paid within the thirty (30) day period identified in the Louisiana Mineral Code.

33.

Because all payment formulas, affiliate and non-affiliate contractual relationships, and all calculations are exclusively in the control of Chesapeake, Plaintiff is unable to determine all ways in which royalties are being underpaid by Chesapeake. Among other ways in which Chesapeake may be underpaying royalties to Plaintiff are the following:

a) By basing royalty payments upon prices that were below market value (the highest prices obtainable for natural gas of like kind, character, and quality, at the times of production with reasonable effort;

b) Manipulating the selection from among various index prices to achieve an artificially low price for gas valuation;

c) Improperly deducting processing fees related to obtaining marketable natural gas. By failing to pay natural gas royalties based on arms-length sales, Chesapeake should account and pay for any differences between what proper pricing would yield and pricing actually used;

d) Failing to pay royalties on heavy hydrocarbons that condense in the pipeline and are recovered;

e) By using a starting price paid for natural gas that is too low because of, among other things, self dealing sales prices to affiliates being included among the prices for royalty calculation purposes;

f) The volume paid to Jewel Williams and reflected on her checkstubs is less than is produced from the wells in the Haynesville Formation because of, among other

things, Chesapeake improperly deducting in-kind gas used in the gathering and processing, and lost in the gathering line; and

g) Deducting (in-kind) costs from placing the gas in marketable condition, such as gathering, treating, conditioning, dehydrating, compressing, processing, or other improper deductions.

**D. Unjust Enrichment**

34.

The foregoing paragraphs are incorporated as if fully set forth herein.

35.

Defendants received or retained monies due and owing to the Plaintiff.

36.

The existence and ongoing retention of these monies by the Defendants affected an immediate and measurable increase in the Defendants' cash, revenue and profits.

37.

Unjust enrichment is founded on the equitable principle that no one should be enriched at the expense of another. *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So.2d 422 (1967); *Edmonston v. A-Second Mort. Co. of Slidell, Inc.*, 289 So.2d 116 (La.1974).

38.

As a result of the actions described above, Chesapeake has been enriched to the impoverishment of the Plaintiff and other similarly affected lease holders to the extent that royalties have been underpaid. There is no justification or cause for the enrichment of Chesapeake or for impoverishment of the Plaintiffs and Class Members. "A person who has been enriched without cause at the expense of another person is bound to compensate that

person. . . . . The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less." La. C.C. Art. 2298.

## VI. CLASS ACTION ALLEGATION

39.

Upon information and believe, Chesapeake is employing similar tactics throughout all oil, gas and mineral leases in the Haynesville Shale Formaton in which Chesapeake owns a leasehold interest, resulting in nonpayment and underpayment of royalties to all royalty interest owners of those leases.

40.

Plaintiff brings this suit as a class action under Rules 23 (a), (b) (1),(b) (2) and (b) (3) of the Federal Rules of civil procedure on behalf of herself and a plaintiff class ("The Class") composed of:

All non-public juridical person (including but not limited to, natural persons, corporations, partnerships, trusts, limited liability corporations, joint ventures, estates, guardians, tutors, etc) who own or owned royalty interests in natural gas production in Louisiana from three years prior to filing herein, to date; whose natural gas was produced and marketed by Defendants or its wholly owned affiliates or entities; whose royalty payments for such natural gas production was calculated and/or made by Defendants and whose royalty payments were based upon prices below "market value".

41.

This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

1. The Class is ascertainable and there is a well-defined community of interest

among the members of the Class;

2. Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the thousands based on the defendant's lease/production activities in Northern Louisiana. Plaintiff believes that members of the class can be identified by the royalty payment records of Chesapeake Louisiana, LP;

3. Plaintiffs' claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct;

4. There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

    i. Does the Louisiana Mineral Code apply?

    ii. Did the Defendants breach their duty to act as a reasonably prudent operator by selling the produced natural gas at submarket prices?

    iii. Did Chesapeake Louisiana, LP underpay royalties to "The Class"?

    iv. Whether Plaintiffs are entitled to an accurate accounting and restitution from Defendant;

5. These and other questions of law or fact which are common to the members of the class predominate over any questions affecting only individual members of the Class;

6. Plaintiff will fairly and adequately protect the interests of the Class in that

   Plaintiff has no interests that are antagonistic to other members of the Class and have retained counsel competent in the prosecution of class actions to represent themselves and the Class;

7. Without a class action, the Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of its unlawful conduct;

8. Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendants has committed against them;

9. This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision;

10. Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Class members;

11. This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by the Defendant; and

12. In the absence of a class action, Defendants would be unjustly enriched

because it would be able to retain the benefits and fruits of their wrongful conduct.

The Claims in this case are also properly certifiable under applicable law.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class members request that the Court enter an order of judgment against Defendants including the following:

A. Certification of the action as a class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure with respect to Plaintiffs' claim for declaratory relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for underpaid or unpaid royalties, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B. A declaration that Defendants violated the Louisiana Mineral Code.

C. A declaration that Defendants breached oil, gas and mineral leases in relation to royalties paid within the Haynesville Shale Formation.

D. Equitable relief in the form of restitution/disgorgement of unpaid royalties on natural gas.

E. Costs of litigation.

Respectfully submitted,

BY: /s/ Andre' P. LaPlace

ANDRE P.. LAPLACE #08039
2762 Continental Drive, Ste. 103
Baton Rouge, Louisiana 70808
(225) 924-6898

BY: /s/Richard J. Arsenault______________
RICHARD J. ARSENAULT #02563
**NEBLETT, BEARD & ARSENAULT**
P.O. Box 1190
Alexandria, LA 71309-1190
Phone: (318) 487-9874