# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JEWEL WILLIAMS | CIVIL ACTION NO. 10-1906 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHESAPEAKE LOUISIANA, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Three motions are pending before the Court: a Motion to Certify Class filed by Plaintiff Jewel Williams [Record Document 21]; a Motion for Denial of Class Certification [Record Document 69] filed by Defendants Chesapeake Operating, Inc. ("Chesapeake Operating"), Chesapeake Louisiana LP ("Chesapeake Louisiana"), and Chesapeake Energy Corporation ("Chesapeake Energy") (collectively "Defendants"); and a Motion for Summary Judgment on Plaintiff's Unjust Enrichment Cause of Action [Record Document 51] filed by Defendants.  Oral argument on all of these motions was held in open court on October 5, 2012.  Defendants move the Court to deny class certification, arguing that the notice required by the Louisiana Mineral Code for royalty litigation cannot be given on a class-wide basis.  Defendants also move for dismissal of Plaintiff's unjust enrichment claim on the ground that Louisiana law bars such a claim when another remedy at law for the alleged enrichment is available. For the reasons given below, the Court **GRANTS** the Defendants' Motion for Denial of Class Certification and Motion for Summary Judgment on Plaintiff's Unjust Enrichment Cause of Action and **DENIES** Plaintiff's Motion to Certify Class.

I.      **Factual and Procedural History**

The facts relevant to these motions have been set out multiple times in the Court's previous orders, so they will not be repeated here. [See Record Documents 58, 38, and 24]. The substance of each of these motions has been asserted at least once before; only their procedural posture distinguishes them from their predecessors. Therefore, before addressing the pending motions directly, it is necessary to briefly explain the procedural history of this case. Early in this litigation, Plaintiff moved for class certification. [Record Document 21]. Defendants moved to strike the class allegations, arguing that class certification was inappropriate because the notice requirement of the Louisiana Mineral Code was a threshold requirement for all royalty litigation and the class-wide notice given by Plaintiff was not adequate as a matter of law. [Record Documents 6 and 8]. The Court agreed with Defendants, struck the class allegations from the complaint, and denied the Motion for Class Certification as moot. [Record Document 24]. Plaintiff appealed, attempting to invoke appellate jurisdiction to review the class certification order. A panel of the Fifth Circuit, however, dismissed the appeal for lack of jurisdiction. [Record Document 31]. The appellate court reasoned that because the Court did not rule on the pending motion to certify the class, there was no appellate jurisdiction under Fed. R. Civ. P. 23(f). Defendants have now moved for denial of class certification for the exact same reasons given in their previous motion to strike. [Record Document 69]. Defendants claim that a ruling on their motion will place this case in the appropriate posture for the appellate court to review the Court's ruling that the insufficiency of notice given on behalf of a putative class bars class certification as a matter of law.

As for the pending motion for summary judgment, Defendants previously moved to dismiss Plaintiff's unjust enrichment claim on substantially the same grounds as those argued here. [Record Documents 6 and 7]. The Court denied Defendant's previous motion, holding that Plaintiff's unjust enrichment claim was properly pled in the alternative as allowed by Fed. R. Civ. P. 8(d) and that a valid contract had yet to be proved. [Record Document 38]. Chesapeake Louisiana subsequently amended their pleadings to admit that "on April 24, 2009, Plaintiff entered into an oil, gas, and mineral lease with Chesapeake [Louisiana]," and that "the referenced lease provides for, and governs, the payment of royalties to the lessor." [Record Document 66]. Now all Defendants move for partial summary judgment, pressing substantially the same arguments found in the previous motion to dismiss and relying on Chesapeake Louisiana's admission that a valid contract governs the payment of royalties to Plaintiff. Defendants argue that the existence of a valid contract precludes any claim for unjust enrichment.

## II.    Class Certification on the Contractual Royalty Claim

Plaintiff asserts a claim on behalf of a class of similarly situated mineral lessors for under-payment of royalties by Defendants. Defendants move the Court to deny class certification, arguing that the notice required by the Louisiana Mineral Code for royalty litigation cannot be given on a class-wide basis. La. Mineral Code Article 137 provides:

> If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.

> La. Rev. Stat. Ann. § 31:137.

Fed. R. Civ. P. 23, on the other hand,  provides no such limitation on or prerequisite for the filing of a class action.

In her supplemental briefing, Plaintiff offers no new reasons why the Court should deviate from its previous analysis concerning the sufficiency of class notice for mineral royalty claims by lessors under Louisiana law.  This Court has already considered and rejected Plaintiff's argument that the notice requirement does not apply because the putative class does not seek dissolution of the lease or "damages," but merely unpaid royalties due. The Court is satisfied with its interpretation of Louisiana law, that is, La. Rev. Stat. Ann. § 31:137 requires notice to the lessee as a prerequisite to suit.

Thus, the issue before the Court is how to resolve the conflict  between this Louisiana statute and Fed. R. Civ. P. 23.  Since its last writing on this issue, the Court's own research has uncovered the recent Supreme Court case of Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 130 S.Ct. 1431 (2010), which involves a situation similar to the one before the Court.[1]  Shady Grove clarifies the analysis that is appropriate when a state law limits the filing of class actions and that law appears to be in conflict with Fed. R. Civ. P. 23.

In Shady Gove, the Court held that a New York statute barring class actions in suits seeking penalties or statutory damages did not preclude a federal court sitting in diversity from certifying a class action under Fed. R. Civ. P. 23.  Id. at 1443 (plurality opinion), 1460

---

[1] Shady Grove was decided after the Fifth Circuit's decision in Chesapeake USA, Inc. v. Vermillion Parish School Bd., 377 F.3d 459 (5th Cir. 2004). The Court relied on Vermillion Parish School Bd. in its earlier Memorandum Order granting Defendants' Motion to Strike Class Allegations [Record Document 24].

(Stevens, J, concurring). The Justices, however, were divided on the reasons supporting the judgment.  Justice Scalia, writing for a plurality, and Justice Stevens, who concurred in judgment and provided the necessary fifth vote, agreed that in order to decide whether a federal court sitting in diversity must apply a Federal Rule of Civil Procedure or a state rule the court must first determine whether the federal rule answers the question in dispute.  If "the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law," then the federal rule is applied unless it exceeds the limits set by the Rules Enabling Act. Id. at 1437, 1448-49, 1451 (quotation marks and citations omitted). Thus, if a federal rule of civil procedure answers the question in dispute, the Rules Enabling Act rather than Erie v. Thompkins determines whether state or federal law is applied. 28 U.S.C. § 2072, 304 U.S. 64 (1938). Both Justices Scalia and Stevens agreed that Fed. R. Civ. P. 23 decides whether a plaintiff could bring a class action suit, thus leaving no room to apply the New York statute.

The plurality and the concurrence differed on the second part of the analysis—the test for whether a federal rule is ultra vires.  The Rules Enabling Act provides as follows:

(a)     The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

(b)     Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2072

Justice Scalia reasoned, citing Sibbach v. Wilson & Co., 312 U.S. 1 (1941), that the validity of the federal rule does not turn on whether the state rule it would displace is substantive or procedural, but only on whether the federal rule "really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Shady Grove, 130 S.Ct. at 1142.  Justice Scalia found that Fed. R. Civ. P. 23 governed in Shady Grove because there is no question that it really regulates procedure.

Justice Stevens, however, relying on the Rules Enabling Act's requirement that the rules promulgated by the Supreme Court not "abridge, enlarge or modify any substantive right," reasoned that the substantive or procedural nature of the conflicting state law must also be taken into account. 28 U.S.C. § 2072, Shady Grove, 130 S.Ct. at 1449 ("The Enabling Act's limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules cannot displace a State's definition of its own rights and remedies.").  If a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that result. Id at 1453. If, however, the federal rule cannot be interpreted to not "displace a state law that is procedural in the ordinary sense of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right," then the state rule must be applied. Id. at 1452.

In the case before the Court, Justice Stevens agreed that Fed. R. Civ. P. 23 governed, finding that the New York law was procedural in nature. He noted that because

an argument can almost always be made that a procedural rule is in fact substantive in that it alters the distribution of society's risks and rewards, "the bar for finding an Enabling Act problem is a high one" and "[t]here must be little doubt" that a rule which appears procedural is actually substantive.  Id. at 1457.  Justice Stevens noted that the New York law was directed to the New York Courts; it did not restrict its application to any particular area of substantive law but rather purported to apply to all cases brought in New York under all sources of law.  Id. at 1458-59.  Furthermore, the type of reasoning that provided the policy background for the law—calibrating the difficulty of litigating certain types of claims in New York—is the same type of balancing that underlies procedural rules such as setting filing fees and deadlines for briefs. Id. at 1459. Accordingly, Justice Stevens found that the New York law did not meet the high standard necessary to find that an apparently procedural rule is actually a substantive one.

The few courts that have found it necessary to decide which opinion in Shady Grove provides the controlling standard have concluded that Justice Steven's opinion, which provided the necessary fifth vote and which concurred on the narrowest ground, controls. Garman v. Campbell County School Dist. No. 1, 630 F.3d 977, 983 n.6 (10th Cir. 2010) (citing Marks v. United States, 430 U.S. 188, 193 (1977) for the principle that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."), see generally 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, §

4509, n.109 (2d ed. 2012) (collecting cases holding that the concurrence is controlling), but see Yates-Williams v. Nihum, 268 F.R.D. 566, 568 (S.D. Tex. 2010) ("Federal courts are not bound to follow a state law that is in some sense 'substantive' if it conflicts with the Federal Rules of Civil Procedure."), Retained Realty, Inc. v. McCabe, 376 Fed. Appx. 52, 56 n.1 (2d Cir 2010) (applying both the plurality and concurrence).  This Court agrees that Justice Stevens reached the same result as the plurality through a narrower ground—"narrower" because Justice Stevens' opinion requires federal preclusion of fewer state laws.  Thus, this Court will follow the standard set out in the concurrence.

In the instant case, Fed. R. Civ. P. 23 conflicts with state law.  Fed. R. Civ. P. 23 answers the question of whether a class action may be certified. It provides that if the criteria set forth in subdivisions (a) and (b) are met, a plaintiff's is "categorically" entitled to pursue his claim as a class action.  Shady Grove, 130 S.Ct. at 1437. The scope of Fed. R. Civ. P. 23 is so broad that it leaves no room for the notice provisions of the Louisiana Mineral Code to operate. In Chesapeake USA, Inc. v. Vermillion Parish School Bd., 377 F.3d 459 (5th Cir. 2004), the Fifth Circuit affirmed the denial of class certification in a suit alleging underpaid mineral royalties on the ground that class notice did not satisfy the requirements of the Louisiana Mineral Code. The court ruled that class notice "upsets the careful balance established by Mineral Code Articles 137-141 between providing an incentive for lessees to promptly pay royalties, yet giving the lessee a reasonable way to avoid the harsh remedy of lease cancellation." Id. at 464. Fed. R. Civ. P. 23 states that a class action may be brought if its requirements are met, but Louisiana law adds hurdles to

bringing such a claim: 1.) notice is a necessary prerequisite to royalty litigation brought by lessors against lessees under the Mineral Code; and 2.) notice may not be given on a class-wide basis. Id. at 462, Rivers v. Sun Exploration and Production Co., 559 So.2d 963, 969 (La. Ct. App. 1990). These two principles combined prevent these types of royalty claims from being brought as class actions. The categorical rule that a plaintiff is entitled to bring a suit as a class action if the requirements of Fed. R. Civ. P. 23 are met therefore leaves no room for the operation of the Louisiana rule.

The question before this Court now becomes whether the Louisiana rule which precludes the filing of class action claims for the  underpayment of mineral royalties is a rule of procedural or substantive law.  The Court is convinced that this rule is so interwoven with the substantive law governing the payment of mineral royalties in Louisiana that it is a substantive rule. That the notice requirement defines the scope of the rights and remedies of mineral lessors and lessees is made clear by the Fifth Circuit's analysis in Vermillion Parish Sch. Bd.:

> The Official Comment to LSA-R.S. 31:137 states that it is the intent of Mineral Code Articles 137-141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves. The Official Comment further describes the balance struck by these articles as follows: "The total effect of these articles, then, is to provide a spur to timely payment of royalties due while giving lessees a reasonable way in which to avoid the harsh remedy of cancellation. The spur is the special remedy. The means for avoiding cancellation is by responding within the stated period to the notice of failure to pay required by Article 137."
>
> 377 F.3d at 463 (citations omitted).

The notice requirement is what gives shape to the substantive rights and remedies of the parties in royalty litigation; it is the means by which the Louisiana legislature has chosen to define the rights and obligations of each party in this particular area of law. In this situation, the Court is convinced that "procedure and substance are so interwoven that a rational separation because well-nigh impossible." Shady Grove, 130 S.Ct. at 1450.

The Court is mindful of the high bar set by Justice Stevens for showing that an apparently procedural rule is in fact substantive. Shady Grove, 130 S.Ct. at 1457.  The notice requirement, however, differs in important ways from the New York rule in Shady Grove. The notice requirement here does not apply to claims irrespective of their source; it only applies to mineral royalty claims brought by lessors under Louisiana law.  Rather than being aimed at "improv[ing] the accuracy or lower[ing] the court costs" of the judicial process, the purpose of procedural rules, the notice requirement seeks to alter the balance of power between parties operating in the shadow of one particular area of law.  Healy Co. v. Milwaukee Metropolitan Sewerage, 60 F.3d 305, 310 (7th Cir. 1995) (Posner, J.). Purposely interfering with the balance of power between social actors is precisely what the legislature intends when it alters substantive law. Id. (noting the substantive nature of apparently procedural rules that are limited to a particular substantive area and are clearly intended to influence substantive outcomes).

Fed. R. Civ. P. 23 alters Louisiana substantive law in this case. Therefore, to apply it in this case falls outside the power granted by the Rules Enabling Act. The Court must apply state substantive law. Under Louisiana law, class notice for underpayment of royalties

does not meet the notice requirements of the Louisiana Mineral Code. See [Record Document 24]. Accordingly, a class may not be certified on this basis.

## III.   Plaintiff's Unjust Enrichment Claims

Defendants move to deny class certification on Plaintiff's class unjust enrichment claim and to dismiss Plaintiff's individual unjust enrichment claim via summary judgment. Before these motions may be addressed, some background on the unjust enrichment cause of action in Louisiana is necessary.

### A.   The Unjust Enrichment Cause of Action in Louisiana

La. Civ. Code Ann. art. 2298 governs claims of unjust enrichment:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The following elements must therefore be met to make out an unjust enrichment claim in Louisiana: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff." Dugas v. Thompson, 71 So.3d 1059, 1067-68 (La. Ct. App. 2011).  Only the fifth element is at issue here.  The "no other remedy at law" requirement bars an unjust enrichment claim, which sounds in equity, if the law provides a rule governing whether a remedy is available.  The justification for this requirement is given in Edmonston v. A-Second Mortg. Co. of Slidell, Inc., 289 So.2d 116, 122 (La. 1974):

> Civil Code Article 21 [a previous codification of the unjust enrichment cause of action] expressly states that the judge can turn to equity (actio de in rem verso) only where there is no express law. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. It must not 'perpetrate a fraud on the law.' (citations omitted).

The First Circuit in <u>Mouton v. State</u>, 525 So.2d 1136, 1142 (La. Ct. App. 1988) elaborates, "[u]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided." Similarly, in a review of the work of the Louisiana Appellate Courts during the 1967-68 term, Professor Saul Litvinoff, the principle authority on the law of obligations in Louisiana, explains the limiting principle of unjust enrichment in the context of claims barred by prescription:

> Where there is a normal remedy for the impoverished party, the action de in rem verso should not be allowed for the sole reasons that the regular action is prescribed, because in such a situation the exceptional remedy appears incompatible with a rule of positive law. It seems clear that in every case of acquisitive or liberative prescription one party is enriched by the right prescribed in his favor and another is impoverished by the loss of the same right prescribed against. However, neither the enrichment nor the impoverishment can be there termed "unjust" since they take place by the operation of rules of law the enactment of which responds very much to public policy.

> Saul Litvanoff, Obligations in Work of Appellate Courts 1967-68,  29 La. L. Rev. 200, 205 (1969).

Professor Litvanoff goes on to list instances where French courts refused to allow plaintiffs to bring unjust enrichment claims when legal rules such as res judicata or the statute of frauds barred contractual actions.   <u>Id.</u>   Louisiana courts continue to adhere to this understanding, frequently dismissing unjust enrichment claims when a contractual or delictual right of action was previously available to the plaintiff but has since prescribed.

Walters v. MedSouth Record Mgmt., LLC, 38 So.3d 245 (La. 2010) (negligence claim had

prescribed), Dugas v. Thompson, 71 So.3d 1059 (La. Ct. App. 2011) (conversion claim had

prescribed).  In Walters, the Louisiana Supreme Court emphasized that the question of

whether an unjust enrichment cause of action may be pled does not turn on whether an

alternate action at law would be successful.  38 So.3d at 245, 246.  Neither is an unjust

enrichment claim available when another remedy of law has not prescribed but has been

or could still be exercised by the Plaintiff.  Fagot v. Parsons, 958 So.2d 750, 752 (La. Ct.

App. 2007) (no unjust enrichment claim when legal remedy was already exercised against

one defendant and legal cause of action existed against another defendant).

The Louisiana courts of appeals have also made clear that an unjust enrichment

claim will not lie so long as the law provides a remedy for the enrichment against anyone,

not only the defendant against whom the unjust enrichment claim is asserted.  Hall v.

James, 986 So.2d 817 (La. Ct. App. 2008) (no unjust enrichment claim against other

mineral royalty interest holder when mineral lessee underpaid plaintiffs and overpaid other

royalty holders, because plaintiffs have contractual claim against lessee.), Fagot v. Parsons,

958 So.2d 750, 752 (La. Ct. App. 2007) (no unjust enrichment claim against one defendant

when other remedies are available against other defendants), Solieau v. ABC Ins. Co., 844

So.2d 108, 111 (La. Ct. App. 2003) (no unjust enrichment cause of action against party

who was enriched by defendant's theft when plaintiff settled with defendant and obtained

a judgment of restitution against that defendant).

Typically, an unjust enrichment claim will lie when a contract was not successfully formed and yet one party fulfills a promise that was contemplated when the parties were attempting to come to an enforceable agreement.  ARC Indus., L.L.C. v. Nungeseer, 970 So.2d 690 (La. Ct. App. 2007) (consultant was accidentally paid for work he did not perform under a "non-binding framework"), B&B Cut Stone Co., Inc. v. Resneck, 465 So.2d 851 (La. Ct. App. 1985) (contractor installed marble fireplace though there was no agreement as to price of installation and thus no contract), Patin v. Jumonville, 336 So.2d 259 (La. Ct. App. 1976) (defendant and surveyor did not agree on price of full perimeter survey, and thus no contract was formed).

In sum, Louisiana law draws a distinction between being unable to prevail on a legal claim because of a positive rule of law and the law simply not providing a rule to recover the unjust enrichment. The remedy of unjust enrichment is only available for the later situation where positive law does not give a rule that determines whether recovery is or is not available. The primary purpose of the no-other-remedy-at-law requirement is therefore to prevent the plaintiff from using unjust enrichment to circumvent positive rules of law that would otherwise prevent recovery.

**B.    The Class Unjust Enrichment Claim**

Plaintiff argues that her class unjust enrichment claim is unencumbered by the notice requirement that bars her contractual claim, and that she should therefore be permitted to certify a class on the unjust enrichment claim. The Court is convinced,

however,  that because the notice requirements of the Mineral Code bar class certification of the contractual claim asserted on behalf of the putative class, an unjust enrichment claim likewise does not lie on a class-wide basis. The Vermillion Parish School Bd. decision announces a positive rule of law that the notice requirements of the Louisiana Mineral Code preclude mineral royalty litigation from being conducted on a classwide basis.  377 F.3d 459, 461-64 (5th Cir. 2004). To allow class certification on the unjust enrichment claim for the same enrichment alleged in the contractual claim when the law prohibits class certification on the contractual claim would be to engage in exactly the type of subversion of positive rules of law by equity that the "no other remedy at law" requirement is designed to prevent.[2]  Accordingly, neither the contractual nor the unjust

---

[2] It is true that when ruling on a motion to certify class, the court must not consider the merits of the claim. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citing Miller v. Mackey International, 452 F.2d 424, 427 (5th Cir. 1971) (Wisdom, J.)). Denial of class certification because a particular claim may not be brought as a class action does not, however, touch the merits of the claim. When the claim on which class certification is sought may not be properly brought as a class action, it is appropriate for the Court to deny class certification on that ground. In LaChapelle v. Owens-Illinois, Inc., the Fifth Circuit ruled that because the opt-out procedure for a class action under Fed. R. Civ. P. 23(b)(3) and the opt-in procedure for a class action under the Federal Age Discrimination in Employment Act were fundamentally incompatible, a Fed. R. Civ. P. 23 class action may not be brought for ADEA claims. 513 F.2d 286, 288-89 (5th Cir. 1975). While the instant case involves incompatibility between state substantive law and federal class action procedures, rather than incompatibility between a federal class action procedures and a federal statute, the same principle governs the disposition of both cases. See also Chesapeake USA, Inc. v. Vermillion Parish School Bd., 377 F.3d 459, 464 (5th Cir. 2004) (affirming the district court's denial of class certification because class notice does not satisfy the Louisiana Mineral Code.).

enrichment claims alleged by the Plaintiff may be brought as class actions. Defendants' motion to deny class certification is therefore **GRANTED** and Plaintiff's motion to certify class as to the unjust enrichment claim is **DENIED**.

### C.    Ms. Williams' Unjust Enrichment Claim

The Defendants have also filed a motion for summary judgment on Ms. Williams' unjust enrichment claim. In their motion Defendants argue that there is no question of fact material to the question of whether another remedy at law exists for the alleged unjust enrichment. Arguing that Plaintiff's claim sounds in contract, Defendants point to their admission that a valid lease between Chesapeake Louisiana and the Plaintiff governs the payment of royalties in this case.

In her opposition, Plaintiff makes three main counter-arguments.  First, Plaintiff argues that the validity of the mineral lease between her and Chesapeake Louisiana, LP is thrown into question by Chesapeake Louisiana's failure to execute "the Memorandum or the Mineral Lease."  [Record Document 83, p.16].  Second, Plaintiff argues that the interrelated nature of the Chesapeake entities and the joint effort of Chesapeake Operating, Inc. and Chesapeake Energy Marketing, Inc., neither of which are in privity with Plaintiff, to skew the market price of natural gas "raise the very real spectre of whether or not Ms. Williams has a remedy against a hollow corporation [Chesapeake Louisiana, LP] or whether her only remedy for unpaid royalties is against Chesapeake Operating, Inc. or Chesapeake Energy marketing, Inc." Id. at 23.  Third, Plaintiff argues

that her unjust enrichment claim should survive summary judgment because it is pled in the alternative. Id. at 20-22.

Plaintiff's first argument will not detain the Court long. Chesapeake Louisiana admits that it entered into the Mineral Lease with Ms. Williams, and that the lease governs the payment of royalties.  [Record Document 66].  Plaintiff has also filed a sworn affidavit in which she admits that she signed the lease, that the lease provided for her personal interest in the mineral rights at issue, and that she received royalties from Chesapeake Louisiana LP "on the basis" of the April 24, 2009 signed oil lease. [Record Document 28-2, pp.1-2].  Mineral leases and mineral royalties are mineral rights. La. Rev. Stat. Ann. § 31:16.  Mineral rights are real rights. Id.  A mineral right is an incorporeal immovable. La. Rev. Stat. Ann. § 31:18.  Louisiana Civil Code Article 1839 provides that a "transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath." Assuming that the mineral lease does not qualify as an authentic act or an act under private signature, the creation of the mineral lease has nevertheless been recognized by Ms. Williams under oath.  [Record Document 28-2, pp.1-2].  Furthermore, there is no question that the rights granted by the mineral lease have been exercised by Chesapeake Louisiana and that Ms. Williams has been paid some royalties pursuant to the terms of the mineral lease. Accordingly, Plaintiff's first argument fails to raise a genuine question of

material fact regarding the validity of the mineral lease.

Plaintiff's second argument is foreclosed by Hall v. James, 986 So.2d 817 (La. Ct. App. 2008), Fagot v. Parsons, 958 So.2d 750, 752 (La. Ct. App. 2007), and Solieau v. ABC Ins. Co., 844 So.2d 108, 111 (La. Ct. App. 2003).  When the law only provides a remedy against someone who is not the enriched defendant, a cause of action against the enriched defendant is still not available. The rules of contract law would determine whether the lease clause providing for a royalty of one-fifth (1/5) of the market price of gas was breached. The law, therefore, provides Ms. Williams a remedy against Chesapeake Louisiana for the amount of lost royalties. It does not matter that Chesapeake Louisiana may also have a claim against the other Chesapeake entities for any amount to which Ms. Williams is entitled.

During oral argument, Plaintiff emphasized that the culpable and enriched parties were the Chesapeake entities other than Chesapeake Louisiana.  Assuming for the sake of argument that the other Chesapeake entities are indeed culpable and were enriched, this fact still does not raise a genuine dispute regarding Plaintiff's contractual right of action against Chesapeake Louisiana. There is no rule in Louisiana contract law that in order to be liable for a breach of contract, the party who failed to perform must know that their performance was deficient or have chosen to render inadequate performance. If Chesapeake Louisiana underpaid their royalties as a result of actions of Chesapeake entities further downstream, this does not change the fact that underpayment by

Chesapeake Louisiana is a breach of their contract with Plaintiff.

Finally, Plaintiff argues that her unjust enrichment claim should survive summary judgment because it is pled in the alternative. The federal district courts in this state are divided on the question of whether a Louisiana unjust enrichment claim survives a motion to dismiss because it is plead in the alternative.  Compare Property One, Inc. v. USA Agencies, LLC, 830 F.Supp.2d 170, 181 (M.D.La. 2011) (Brady, J.)(holding that an unjust enrichment claim may survive a motion to dismiss when defendant fail to conduct an Erie analysis showing that Louisiana case-law dismissing such claims at the pleading stage governs in federal court) with Wiggins v. Chesapeake Energy Co., 12-0541 (W.D.La. August 20, 2012) (Hicks, J.) ("that plaintiffs have pled their claims against [defendants] in the alternative also does not change that plaintiffs have a cause of action for breach of contract against [a defendant]") (quoting Conerly Co. v. Regions Bank, 2008 WL 4975080 (E.D. La. Nov. 20, 2008)).

Plaintiff's unjust enrichment claim, however, is now challenged by a motion for summary judgment rather than a motion to dismiss.  Assuming for the sake of argument that an unjust enrichment claim may be plead alongside a contractual claim in federal court, at the summary judgment stage the question is simply whether plaintiff has raised a genuine dispute of fact material to the determination of whether an alternative claim at law exists for the enrichment. If Plaintiff can show, for instance, that the issue of whether the existence of a contract governing the payment of royalties is in dispute because of a

defect in formation or some similar reason, then summary judgment may not be granted because of the factual dispute regarding whether an alternate remedy at law exists. However, if there is no dispute of fact material to the question of whether contract law provides a rule governing recovery, then Plaintiff's claim of unjust enrichment will not survive summary judgment.[3] After being permitted additional discovery on this issue Plaintiff has presented evidence tending to show that the Chesapeake entities are indeed interrelated and that the market price of gas is not set by Chesapeake Louisiana.  This evidence, however, fails to call into question the contractual nature of their claim against Chesapeake Louisiana.   Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Unjust Enrichment Cause of Action [Record Document 51] is **GRANTED**.

## IV.   Conclusion

For the reasons given above,

**IT IS ORDERED** that Defendants' motion to deny class certification [Record Document 69] is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to certify class [Record Document 21] is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on

---

[3] Neither party addresses whether the "no-other-remedy-at-law" requirement actually conflicts with the standard for a motion for summary judgment laid out in Fed. R. Civ. P. 54 under <u>Hanna v. Plumer</u>, 380 U.S. 460, 463-71 (1965). The Court has no reason to think that applying Fed. R. Civ. P. 54 leaves no room for the "no-other-remedy-at-law" requirement to operate.

Plaintiff's Unjust Enrichment Cause of Action [Record Document 51] is hereby **GRANTED as to all Defendants**, and Plaintiff's Unjust Enrichment Cause of Action is hereby **DISMISSED with prejudice**.

March 11, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE