**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JEWEL WILLIAMS | CIVIL ACTION NO. 10-1906 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHESAPEAKE LOUISIANA, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Pending before the Court is a motion to dismiss Plaintiff's stipulation pour autrui and tortious interference claims. [Record Document 100]. In this suit, Ms. Williams alleges that the Defendants acted together to underpay the royalties owed to her under her mineral lease. Plaintiff recently filed an amended complaint in which she alleges that an agency agreement between two of the Defendants created a stipulation pour autrui in her favor. She contends that this agency agreement was breached by the underpayment of royalties and that she may recover for this breach. In the same amended complaint, Plaintiff also contends that the Defendants tortiously interfered with her mineral lease. Defendants move to dismiss these two claims on the grounds that: 1) the agency agreement does not create a stipulation pour autrui; 2) Plaintiff has failed to plead a sufficiently narrow duty not to interfere with her mineral lease, as required by the Louisiana jurisprudence. For the reasons given below, the Court **GRANTS** Defendants' Motion to Dismiss to the extent that it is directed towards Plaintiff's tortious interference claim and defers ruling on the portion of the motion aimed at the alleged stipulation pour autrui.

## I.     Factual and Procedural Background

While the underlying facts of this suit have been set out multiple times in the Court's previous orders, a brief summary of the current state of Plaintiff's claims will help to understand the instant motion. [See Record Documents 58, 38, and 24]. On December 28, 2010, Williams filed this lawsuit against the Defendants—Chesapeake Louisiana, LP ("Chesapeake Louisiana"), Chesapeake Operating, Inc. ("Chesapeake Operating"), Chesapeake Energy Co. and Chesapeake Energy Marketing, Inc.—seeking to recover for allegedly unpaid or underpaid royalties. She alleged that the Defendants have engaged in a scheme to sell the gas produced from the leased premises to Chesapeake-affiliated entities at a price below market value in an effort to profit from substantially reduced royalty payments. The related entities then conduct the first true sale to a bona fide third purchaser. As a result of this scheme, Williams contends that Defendants have failed to pay or have underpaid royalties rightfully due to her.

At issue in this motion are two claims recently added by Plaintiff in her second amended complaint [Record Document 98]. In this amended complaint, Plaintiff alleges that Chesapeake Operating breached an agency agreement between it and Chesapeake Louisiana when it failed to pay the correct amount of royalties to Plaintiff. Plaintiff contends that she may recover for the breach of this agreement, to which she is not a party, under a theory of stipulation pour autrui. She alleges that the following language from the agency agreement evidences the intent of Chesapeake Louisiana and Chesapeake Operating to confer an enforceable benefit on her:

> Scope of Authority: Agent is authorized and empowered to collect and receive payment for the account of the Owner of any proceeds from any sale or other disposition of oil, gas or other minerals produced and saved from any and all property and properties held by Owner, or otherwise derived therefrom, and to otherwise act with respect thereto in accordance with, but only in accordance with, the provisions hereof and the written instruction of the Owner with respect to its respective interests in properties. Agent is further authorized and empowered to pay or cause to be paid all production sales proceeds applicable to any and all properties held by Owner, receive all notices, approve all expenditures, receive all billings for and approve and pay (out of funds attributable to or provided by Owner, respectively) said Owner's share of joint expenses, and, except where consent is specifically required herein or as otherwise limited hereby, to deal generally with and to enter into agreements on behalf of the Owner with purchasers of production of oil and/or gas produced from the Owner's properties and with the operators thereof. In that connection, Agent is authorized to communicate with purchasers of production from the Owner's properties regarding administrative and accounting matters concerning the interest of the Owner to such properties.
>
> [Record Document 98, pp. 8-9].

The amended complaint also asserts that the Defendants have tortiously interfered with Plaintiff's mineral lease by working together to distort the market price of natural gas:

> the officers of the general partner of Chesapeake Louisiana, L.P.... through a labyrinth of interrelated corporate entities Chesapeake Louisiana, L.P., Chesapeake Operating, Inc., Chesapeake Energy Corporation and Chesapeake Energy marketing, Inc. and by their intentional design [sic] caused Chesapeake Louisiana, L.P. and its agent Chesapeake Operating, Inc. to breach the mineral lease with Jewell Williams..."
>
> Id.

Defendants now seek to dismiss these two newly-added claims.

## II. The Law Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint that does not "state a claim to relief that is plausible on its face" is subject to dismissal. Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (citing Bell Atlantic Co. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). When ruling on a motion to dismiss, the Court may not evaluate plaintiff's likelihood of success but must construe the complaint liberally and accept all factual allegations found in the complaint as true. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009).

### III.  Stipulation Pour Autrui

While no conflict of laws issue was raised by either party in their briefing, the Court notes that the agency agreement in question was executed between two Oklahoma entities, raising the possibility that Oklahoma law may govern the construction of the contract. [Record Documents 12, 98 at pp. 8-9].[1] In a diversity case, a federal court must apply the conflict of laws rule of the state in which it sits. Williamson Pounders Architects PC v. Tunica Cnty., Miss., 597 F.3d 292, 295 (5th Cir. 2010). In Louisiana, it appears, though the Court invites contradiction on this point, that a choice of law clause found in a contract would determine the law that governs whether a stipulation pour autrui, or a third party beneficiary contract as it is generally known in common-law jurisdictions, was created by that agreement. See La. Civ. Code Ann. art. 3540 ("All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state

---

[1] The Court has previously reviewed the agency agreement in connection with another motion.

whose law would otherwise be applicable under Article 3537."). The Court therefore **ORDERS** the parties to brief the issue of whether there are conflicts of law issues this Court must address before it can rule on this portion of the motion to dismiss. Both parties shall have until **October 2, 2013** to submit briefs.

**IV.   Intentional Interference with the Mineral Lease.**

The Fifth Circuit has recognized that the Louisiana cause of action for tortious interference with contract is very narrowly drawn. Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P., 689 F.3d 380, 395-96 (5th Cir. 2012). The Petrohawk Court specified that in order to make out such a claim, the plaintiff must identify a "narrow, individualized duty between the plaintiff and the alleged tortfeasor." Id. The Louisiana Supreme Court first recognized a Louisiana cause of action for tortious interference with contract in 9 to 5 Fashions, Inc. v. Spurney. 538 So.2d 228, 231-34 (La. 1989). Relying on Article 2315 of the Louisiana Civil Code, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," the Louisiana Supreme Court found that a plaintiff may have a cause of action for tortious interference with contract against an officer of a corporation who interfered with a contract between that corporation and the plaintiff. Id.; La. Civ. Code Ann. art. 2315. The Spurney Court was careful to limit its holding narrowly to the facts of that case:

> In the present case we recognize, as set forth particularly herein, only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.

Id. at 234.

The Fifth Circuit has held, however, that the Louisiana Supreme Court did not exclude the possibility that on other facts, Louisiana law might recognize a duty on other individuals or entities not to interfere with third-party contracts. American Waste & Pollution Control Co. v. Browning–Ferris, Inc., 949 F.2d 1384, 1387-88 (5th Cir. 1991) (noting that it is a question of law whether such a duty exists under La. Civ. Code Ann. art. 2315 ). Surveying the Louisiana jurisprudence, the Fifth Circuit has concluded that whether a cause of action for tortious interference lies turns on the nature of the duty the tortfeasor allegedly owes to the plaintiff. Id. at 1386-91. If a "narrow, individualized duty" is alleged, the plaintiff may have a cause of action; but if only "broad and amorphous duties" are said to bind the tortfeasor to the plaintiff, the plaintiff will have no claim. Petrohawk Properties, 689 F.3d at 395-96.

Plaintiff's action is against the Chesapeake entities, not their officers; thus it does not match up perfectly with the set of facts in Spurney. Furthermore, the Court finds that Plaintiff has failed to plead a duty that is sufficiently narrow to support an extension of the duty found in Spurney to the instant facts. In her opposition to the present motion, Plaintiff gives only a conclusionary statement of the Defendants' duty and then emphasizes the complexity of Defendants' corporate structure:

> the interrelated subsidiaries and affiliates of the Chesapeake labyrinth had a duty to not interfere with the Mineral Lease between Chesapeake Louisiana, L.P. and Jewell Williams...

> it is the labyrinth of interrelated corporate entities concertedly acting in their own self interests that supports the Plaintiff's claim for tortious interference with a Mineral Lease.

> [Record Document 103, p.7] (emphasis in original).

Similarly, in her amended complaint, Plaintiff appears to rely only on the interrelation and coordination of the Defendants to support her claim:

> Those officers [of the defendant entities], through a labyrinth of interrelated corporate entities... and by their intentional design caused Chesapeake Louisiana, L.P. and its agent Chesapeake Operating, Inc. to breach the mineral lease with Jewell Williams by manipulating the price of natural case through a series of internal transactions designed to increase midstream deductions and deflate the weighted average sales price thereby artificially and intentionally lowering the value of the natural gas upon which the putative class royalty payments are calculated.
>
> [Record Document 98, p. 10].

The only duty Plaintiff expressly alleges in her amended complaint is a duty "to refrain from intentionally interfering with her mineral lease with Chesapeake Louisiana, L.P." Id. at 9. To the extent that plaintiff argues that a duty not to interfere with a contract is a narrow and individualized duty sufficient to support a duty not to interfere with a contract, Plaintiff assumes what she seeks to prove. The question is then whether by emphasizing the interrelated nature of Defendants and their alleged scheme, Plaintiff has stated a narrow and individualized duty the Defendants owe to her. In Petrohawk, the plaintiff argued that the tortfeasor owed it three duties:

> (1) a duty not to engage in unfair business practices pursuant to the Louisiana Unfair Trade Practices Act;
>
> (2) a general duty under public policy not to induce the property owners to break their contract; and
>
> (3) a duty not to commit fraud on the public record by recording a fraudulently acquired document,

Petrohawk Properties, 689 F.3d at 396.  The Fifth Circuit found that all three alleged duties were the type of broad and undefined duties the Louisiana Supreme Court sought to exclude when it declined to adopt wholesale the common law tortious interference claim. Id. at 396 (noting that the statutory definition of an unfair practice under the Louisiana Unfair Trade Practices Act is broad and includes ill-defined subjective elements); Spurney, 538 So.2d at 234 (criticizing the common law doctrine of interference with contract as "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way."). The duties proposed in Petrohawk are better-defined than the duties alleged by the Plaintiff in this suit. Plaintiff merely alleges that the Defendants have worked together with the intent to interfere with her contract. This characterization of Defendants' duty is broad. Indeed, it would seem to apply to most factual situations covered by the common-law claim.  Plaintiff has thus failed to state a plausible claim for tortious interference with contract under Louisiana law.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion To Dismiss [Record Document 100] be and is hereby **GRANTED in part**;

**IT IS FURTHER ORDERED** that Plaintiff's claim for intentional interference with her Mineral Lease is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that by **October 2, 2013** both parties shall submit

briefs on the issue of whether there are any conflict of laws issues this Court must address before it can rule on the portion of the motion to dismiss directed towards the contractual claim premised on a stipulation pour autrui.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 18th day of September, 2013.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE