UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JEWEL WILLIAMS | CIVIL ACTION NO. 10-1906 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHESAPEAKE OPERATING, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Pending before the Court is a motion to dismiss the Plaintiff's stipulation pour autrui claim. [Record Document 100]. In this suit the Plaintiff, Ms. Williams, alleges that the Defendants—Chesapeake Louisiana, LP ("Chesapeake Louisiana"), Chesapeake Operating, Inc. ("Chesapeake Operating"), Chesapeake Energy Co. and Chesapeake Energy Marketing, Inc.—acted together to underpay the royalties owed to her under her mineral lease. Ms. Williams recently filed an amended complaint in which she alleges that an agreement between Chesapeake Louisiana and Chesapeake Operating created a stipulation pour autrui in her favor that was breached by Chesapeake Operating when it participated in the royalty-underpayment scheme mentioned above. Chesapeake Operating moves to dismiss this claim. The Court previously deferred ruling to allow additional briefing on the issue of whether Louisiana or Oklahoma law applies. [Record Document 107, pp. 4-5]. For the reasons given below, the Court now **GRANTS** Defendants' Motion to Dismiss Ms. Williams' stipulation pour autrui claim.

**I.      Factual and Procedural Background**

While the underlying facts of this suit have been set out multiple times in previous rulings [see Record Documents 24, 38, and 58], to aid the reader the Court will give a brief summary of the facts underlying the stipulation pour autrui claim. On December 28, 2010, Ms. Williams filed this lawsuit against the Defendants, seeking to recover for allegedly unpaid or underpaid royalties. She alleged that the Defendants have engaged in a scheme to sell the gas produced from the leased premises to Chesapeake-affiliated entities at a price below market value in an effort to profit from substantially reduced royalty payments. The related entities then conduct the first true sale to a bona fide third-party purchaser. As a result of this scheme, Ms. Williams contends that Defendants have failed to pay or have underpaid royalties rightfully due to her.

At issue in this motion is a stipulation pour autrui claim included in Ms. Williams' second amended complaint. [Record Document 98]. The amended complaint alleges that Chesapeake Operating breached an agency agreement that it had entered into with Chesapeake Louisiana when it failed to pay the correct amount of royalties to Ms. Williams. Ms. Williams contends that she may recover for the breach of this agreement, to which she is not a party, under a stipulation pour autrui theory. She alleges that the following language from the agency agreement demonstrates that Chesapeake Louisiana and Chesapeake Operating intended to stipulate for her benefit by authorizing Chesapeake Operating to pay her royalties:

> Scope of Authority: Agent[1] is authorized and empowered to collect and receive payment for the account of the Owner of any proceeds from any sale or other disposition of oil, gas or other minerals produced and saved from any and all property and properties held by Owner, or otherwise derived therefrom, and to otherwise act with respect thereto in accordance with, but only in accordance with, the provisions hereof and the written instruction of the Owner with respect to its respective interests in properties.  Agent is further authorized and empowered to pay or cause to be paid all production sales proceeds applicable to any and all properties held by Owner, receive all notices, approve all expenditures, receive all billings for and approve and pay (out of funds attributable to or provided by Owner, respectively) said Owner's share of joint expenses, and, except where consent is specifically required herein or as otherwise limited hereby, to deal generally with and to enter into agreements on behalf of the Owner with purchasers of production of oil and/or gas produced from the Owner's properties and with the operators thereof.  In that connection, Agent is authorized to communicate with purchasers of production from the Owner's properties regarding administrative and accounting matters concerning the interest of the Owner to such properties.

Id. at 8-9.  In her opposition, Ms. Williams also identifies the following clause as further evidence of the intent of Chesapeake Operating and Chesapeake Louisiana to stipulate for her benefit:

> 4.   Agreements with Others: Agent agrees that it will be bound by the terms, conditions and warranties and covenants of all effective transfer and division orders heretofore executed by Owner with respect to the Subject Property with the same effect as though Agent had executed the same.

[Record Document 103, p. 6].

## II.   The Law Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint that does not "state a claim to relief that is plausible on its face" is subject to dismissal.  Ashcroft v.

---

[1] Chesapeake Operating is the "Agent" and Chesapeake Louisiana is the "Owner," that is to say the lessor, of the mineral rights at issue.

Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Co. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). When ruling on a motion to dismiss, the Court may not evaluate plaintiff's likelihood of success but must construe the complaint liberally and accept all plaintiff's factual allegations as true. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009).

### III.  Analysis

#### A.  Conflict of Laws

While no conflicts of law were raised by either party in their original briefing, the Court noted in its earlier ruling on this motion that the agency agreement in question was executed between two Oklahoma entities and contained a choice of law clause specifying that Oklahoma law be used to interpret the contract. [Record Documents 12 at 1, 98 at 8-9, and 107 at 4-5].[2] The Court raised the possibility that Oklahoma law may govern the construction of the contract and requested additional briefing. [Record Document 107, pp. 4-5].

A federal court sitting in diversity must apply the choice-of-law rules of the state in which the action is brought. Williamson Pounders Architects PC v. Tunica Cnty., Miss., 597 F.3d 292, 295 (5th Cir. 2010). The Louisiana choice of law rules for conventional obligations are found in Louisiana Civil Code articles 3537-41. Louisiana

---

[2] The Court had previously reviewed the agency agreement in connection with another motion.

Civil Code article 3537 sets out the following general rule:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue.

Articles 3538 and 3539 then give different choice of law rules for defects of form and capacity. La Civ. Code arts. 3538-39. And article 3540, which is titled "Party autonomy," provides that a choice of law clause will be respected:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

La. Civ. Code art. 3540. It would appear that the issue of whether a stipulation pour autrui, or enforceable third party benefit, has been created would fall under Louisiana Civil Code article 3540's "[a]ll other issues of conventional obligations" language, being neither an issue of form nor capacity, and therefore would be subject to a choice of law clause directing that Oklahoma law apply. The parties, however, both represent that because there is no actual conflict between Oklahoma's third party beneficiary doctrine and the law governing stipulations pour autrui in Louisiana, the Court should apply Louisiana law.

The Court agrees that there appears to be no conflict between the law of these two states. Louisiana law provides that when assessing whether a stipulation pour autrui exists, courts should consider three criteria: "whether 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor

and the promissee." La. Civ. Code art. 1978 ("A contracting party may stipulate a benefit for a third person called a third party beneficiary."); Williams v. Certain Underwriters at Lloyd's of London, 398 Fed. App'x 44, 47 (5th Cir. 2010) (quoting Joseph Hosp. Serv. Dist. No. 2 of Parish of St. Mary, 939 So. 2d 1206, 1212 (La. 2006)); New Orleans Public Serv. Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 467 (5th Cir. 1984) (the third party benefit must not be merely incidental; it must be the cause or consideration of the contract) (en banc). Under Oklahoma law, "[a] contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it." 15 Ok. Stat. Ann. § 29. The contract must be "made expressly for the benefit of a third person and expressly simply means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." Keel v. Titan Constr. Co., 639 P.2d 1228, 1231 (Okl. 1988) (quoting Watson v. Aced, Cal., 156 Cal. App. 2d 87, 91-92 (Cal. Ct. App. 1957)) (internal quotation marks omitted). Furthermore, the contractual benefit cannot be merely implied or incidental, though the beneficiary need not be named in the contract. Colony Ins. Co. v. Burke, 698 F.3d 1222, 1230 (10th Cir. 2012) (quoting Oil Capital Racing Ass'n v. Tulsa Speedway, Inc., 628 P.2d 1176, 1179 (Okl. Ct. App. 1981)).

Chesapeake Operating cites Davis Oil Co. v. TS, Inc. for the proposition that "[w]here there is a false conflict (i.e., no conflict between the laws of the forum state and the contractually designated state), the Court can simply apply the forum state's laws." [Record Document 110, p. 2] (citing 145 F.3d 305, 310 n.14 (5th Cir. 1998));

see also Oreck v. ECM Motor Co., No. 98-2647, 2000 WL 1273404 at *1 (E.D. La. Sept. 6, 2000) (citing Davis). The panel in Davis, however, did not face an applicable choice of law clause, so it relied on the following language from Louisiana Civil Code article 3537: "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." Davis, 145 F.3d at 310 n.14.[3] Nevertheless, the Court reads Davis as standing for the broader principle that under Louisiana law, in a false conflict situation, whatever choice of law rule Louisiana law would otherwise provide, be it Louisiana Civil Code article 3537 or 3540, need not be applied.[4] The Louisiana Supreme Court has subsequently embraced this principle:

---

[3] The panel in Davis did interpret a choice of law clause, but it concluded that the parties did not intend the clause to extend to the third party beneficiary question. 145 F.3d at 310 ("Even if HPC and TS/Home intended Ontario law to govern the transfer part of their deal—in addition to how the option would be exercised—the parties do not appear to have meant that choice of law to adopt a privity requirement.").

[4] Chesapeake Operating also cites Bilyea v. Johanson Berenson LLP, 809 F.Supp.2d 547, 553 (W.D. La. 2011). In Bilyea, the court was faced with the question of which state's law governed whether a party was equitably estopped from avoiding arbitration, but it held that it did not need to answer the question because there was no actual conflict between the different states' laws:

> We need not confront this choice of law question here—whether state or federal law applies, and if state law, that of which state—because the parties did not place it at issue, and because it presents a false conflict, as we find, given the facts before us, that the doctrine of equitable estoppel exists in a form similar to that presented by the parties under the contract law of both Louisiana and California, the states whose contract law would most likely apply to the dispute.

809 F.Supp.2d at 553 n.7.

> If the governing law of each jurisdiction is identical, or so similar that the same result would be reached under either law, there is a 'false conflict' and, thus, no need to determine which state's law applies.

Arabie v. CITGO Petroleum Corp., 89 So.3d 307, 327-28 (La. 2012) (citing Eugene F. Scoles, et al., Conflict of Laws 28 n.16 (4th ed.2004)).  Accordingly, the Court will apply Louisiana law to determine whether the Agency Agreement contains an enforceable stipulation pour autrui.

### B. Stipulation Pour Autrui

As noted above, to determine whether there is an enforceable stipulation pour autrui the Court must determine whether: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promissee." Williams, 398 Fed. App'x at 47 (quoting Joseph Hosp., 939 So. 2d at 1212); New Orleans Public Serv. Inc., 732 F.2d at 467 (the third party benefit may not be merely incidental; it must be the cause or consideration of the contract).  Above all, the contract must manifest a clear intention to benefit the third party. Joseph Hosp., 939 So. 2d at 1212.  An assumption of obligations may constitute a stipulation pour autrui, in which case the court consults both the articles and jurisprudence governing the assumption of obligations and the criteria used to determine whether an stipulation pour autrui exists.  La. Civ. Code art. 1821 ("An obligor and a third person may agree to an assumption by the latter of an obligation of the former."); Davis Oil, 145 F.3d at 310-313; Whittington v. Louisiana-Pacific Corp., 385 So.2d 863, 865 (La. Ct. App.

1980).

Neither party argues that the contractual language in question is ambiguous, and the Court agrees that the language is unambiguous; the Court may therefore construe it as a matter of law. Wooley v. Lucksinger, 61 So.3d 507, 558 (La. 2011) (when a contract can be construed from within its four corners, the question of contractual interpretation is answered as a matter of law); Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 391-92 (5th Cir. 2010) (the determination of whether the language in a written contract is ambiguous is a question of law). Chesapeake Operating argues that it is clear from the plain language of two clauses cited by Ms. Williams that they are only a description of the scope of Chesapeake Operating's authority to act on behalf of Chesapeake Louisiana regarding administrative and accounting matters relating to Chesapeake Louisiana's interest in its mineral rights. In other words, Chesapeake Operating argues that the agreement is simply a garden-variety agency agreement entered into in the ordinary course of business, and that it expresses no intent to confer an enforceable benefit on Chesapeake Louisiana's mineral lessors. Chesapeake Operating also argues, citing New Orleans Public Serv. Inc., that because its authority to administer Chesapeake Louisiana's mineral interests was made subject to Chespeake Louisiana's instructions and ongoing control, Louisiana law recognizes no stipulation pour autrui. 732 F.2d at 468 ("Where the promisor's performance is to be made to and is subject to the control of, the promisee, Louisiana courts have refused to find a stipulation pour autrui despite the fact that the promisor

and promisee may have contemplated that the promisor's performance would as a practical matter enable or facilitate the promisee's performance of its obligations to a third party.").

In response, Ms. Williams appears to argue that through the Agency Agreement Chesapeake Operating assumed Chesapeake Louisiana's obligations to pay royalties to its lessors: "[i]t is crystal clear in this instance that the Agency Agreement delegates the lessee's responsibility to pay royalties to Chesapeake Operating, Inc." [Record Document 103, p. 6]. She also argues that "[t]he Agency Agreement was entered into solely to facilitate the sale of natural gas and the payments of royalties to which Chesapeake Louisiana, L.P. was obligated under its leases in the Haynesville Shale Play." Id. In support, she cites the following clause in the Agency Agreement:

> 4.  Agreements with Others: Agent agrees that it will be bound by the terms, conditions and warranties and covenants of all effective transfer and division orders heretofore executed by Owner with respect to the Subject Property with the same effect as though Agent had executed the same.

Id. This is the entirety of Ms. Williams' argument in opposition.

The Court agrees with Chesapeake Operating that Ms. Williams has failed to plausibly plead that it stipulated for her benefit or assumed Chesapeake Louisiana's royalty obligations when it entered into the Agency Agreement. The plain language of the clauses simply does not, Ms. Williams' unsupported contentions to the contrary, provide any evidence of an assumption by Chesapeake Operating of Chesapeake Louisiana's obligations to its lessors. The scope of authority clause merely "authoriz[es]

and empower[s]" Chesapeake Operating to act on behalf of Chesapeake Louisiana in dealing with lessors. [Record Document 98, pp. 8-9]. The plain language of the clause does not give any indication that Chesapeake Operating agreed to assume any obligations running to Chesapeake Louisiana's lessors.[5] As for the Agreements with Others clause, its application is unambiguously limited to obligations created by transfer and division orders—neither of which are at issue in this litigation. In short, far from evidencing a "manifestly clear" stipulation for a third party, the language of these two clauses gives no indication that any such stipulation was intended.

Furthermore, any benefit that the Agency Agreement conferred on Chesapeake Louisiana's lessors is plainly incidental to that agreement. It is not clear from the pleadings and briefing what this benefit is. Absent the agreement, the lessors would still be entitled to receive royalty payments from Chesapeake Louisiana; therefore any benefit from the agreement must follow from Chesapeake Operating's authority to pay royalties in addition to Chesapeake Louisiana. Apart from noting that the agreement

---

[5] Chesapeake Operating also argues that Louisiana Civil Code article 3016 precludes a finding that it assumed a duty to pay royalties when it entered into a garden variety mandate agreement. Louisiana Civil Code article 3016 provides that "[a] mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract." The parties have not briefed whether there is any conflict between Louisiana and Oklahoma mandate or agency law on this point. Nevertheless, assuming that Louisiana law applies, Chesapeake Operating's argument lacks merit. The situation contemplated by Article 3016 is distinct from the situation presented here. The issue presented by this case is not whether a mandatary binds himself by contracting on behalf of his principal, but whether the agreement creating the mandatary/principal relationship imposes any enforceable duties running from the mandatary to a third party to whom the principal already owes obligations.

"facilitated" payment of royalties to the lessors, however, Ms. Williams does not specify what benefit she derived from it. [Record Document 103, p. 7]. Assuming, though, that the arrangement does benefit the lessors somehow, Ms. Williams' failure to specify the benefit only serves to underscore the fact that the language of the agreement itself makes no mention of any such benefit. As the Fifth Circuit has held, a third party who benefits from an agreement is an incidental beneficiary unless the parties showed that they intended otherwise:

> [I]n any case where A is under a contractual duty to C the performance of which requires labor or materials, and B promises A to supply to him such labor or material; C has no action against B on this promise. In such cases the performance promised by B does not in itself discharge A's duty to C or in any other way affect the legal relations of C. It may, indeed, tend toward C's getting what A owes him, since it supplies A with the money or material that will enable A to perform, but such a result requires the intervening voluntary action of A. B's performance may take place in full without C's ever getting any performance by A or receiving any benefit whatever. In such cases, therefore, C is called an 'incidental' beneficiary and is held to have no right. It would be possible for A to make his contract with B in such terms as to show that A was making it for C's benefit and intended C to have an enforceable right. C would be a donee of the right though not of the promised performance. But in fact such contracts are never so worded.

New Orleans Public Serv. Inc, 732 F.2d at 469 n.34 (quoting 4 Corbin on Contracts § 779D at 45-46 (1951) and noting that Louisiana law requires the same result). Nothing in the pleaded contractual language mentions a benefit that the lessors were to receive from the arrangement, let alone one that was the cause or consideration of the agreement.

Ms. Williams has failed to plausibly plead that Chesapeake Operating and

Chesapeake Louisiana made a manifestly clear stipulation of a non-incidental benefit in her favor when they entered into the Agency Agreement. Her stipulation pour autrui claim must therefore be dismissed.

### IV.	Conclusion

For the reasons given above, Defendants' Motion to Dismiss Ms. Wiliams' stipulation pour autrui claim [Record Document 100] is **GRANTED**, and Ms. Williams' claim is hereby **DISMISSED with prejudice.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 16th day of June, 2014.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE